Good morning, Your Honors. Two questions this Court must ask. One is the invention of the patented portions of the signal in the storage means found in all the claims, all the asserted claims and all the claims in the patent. The answer to both these questions require a reversal of the District Court's decision, I use that term lightly, and a finding that the patent is invalid. The District Court unfortunately left this Court adrift without providing any analysis or opinion. It did not, unfortunately, provide a claim construction. It did not provide any analysis of the claims or any analysis of the accused product. Instead, what it did is just accepted the proposed orders from the plaintiff. Well, given our jurisprudence, put it lightly, as you say, what does it matter? We have to figure it out ourselves, don't we? Yes, Your Honor, because this is de novo. Right, well why don't we concentrate on that? Thank you, Your Honor. The most important issue I'd like to start with is what is the meaning of selected portions of the signal? And it pertains to the storage means in each one of these claims. Basically, it is the selection of data above and below certain limits. Figure 4 in the patent demonstrates the chart, which specifically shows what they're claiming as this selected portion. And the whole idea of the invention, I presume, is that you don't have to store all the data like time and temperature's product, because there's no dispute as to how the time and temperature product works. It stores all the data, and if calculations are to be performed, it uses all the data. Where the assertive patent says, no, we're not going to look at all the data, we're just going to look at past data of some form. We're going to select some portion of the signal, not the whole signal, something less than, and we're going to store that for a later display. In that particular case, the storage of maximums and minimums and everything else that's shown in Figure 4 of the patent, it shows the cross-hatched data as shaded areas D and H, and this is supposedly the calculated data that's stored. Now this is really important because it's clear in the specification as to what was meant by the patentee that this is what's going on. And it's also very important because each of the claims specifically state that there are these peculiar selected portions of the signal. And what's really important too is in the reissue proceedings, the patentee went back to the patent office and said, oh my gosh, our claims are too narrow because we don't cover a situation where you're capturing all the signal or using all of the signal. And they tried to say that was the defect and get a broader issue. And the patent examiner said, wait a second, that's not a defect that we can allow a reissue on because of the fact that you don't have support in the specification for capturing all of the signal from the calculations. And so basically after dialogue back and forth, the patentee had to capitulate and not get these broader claims. And so their file history, which the public should be able to rely upon, is very clear that when you say selected portion of the signal, it's not the entire signal such as in the TNT devices. It would be improper at this point to allow Sensotec to recapture all that was given up and say now we have a product like the time and temperature product that captures all the signal because maybe improvements in memory technology that you can capture all the data and so forth. Maybe the invention of the assertive patent had to do with the fact that maybe they had storage limitations, although that's not stated in the patent specification. But if you really look at the second question, what is the invention here? And what we've heard from Sensotec is the invention is a temperature recording device that records temperature over time that's battery powered and stores calculated data. That's the unique aspect here. But their prior art is replete with all kinds of devices, particularly in this industry. The tennis patent for one, which was something that was cited on the face of the patent, was not ever addressed by the patent examiner, which is very clear. It's a type of device that almost looks like a piece of fruit that can ride with the cargo of produce in transit and record all kinds of data. These particular issues that were more clearly addressed in the tennis patent had to do with shock and vibration, but it also states it can be done for humidity and temperature and everything else. And what this device did is it recorded temperature or shock or humidity, whatever it wanted to do over the course of the entire transit, and stored calculated data. It could store a whole bunch of things. And bear in mind, Dr. Krief, their prior art expert, admitted that all of this hardware is old in the art. And these functions of setting limits, high and low, the fact that you have certain amount of temperatures over a high or under a low, the fact that you provide an average, it's all well known in the art. So if you look at the tennis patent, it has all the same hardware and all the same functions as the circuit patent. And if you look at the Tomei patent, which is another portable temperature recording device, which has all the same elements and functions, but Sensotec claims it does not explicitly discuss a housing or batteries. And that's kind of a strange argument to make, because most modern conveniences in this day and age have a housing or have some sort of power supply. And in fact, the Tomei patent talks about having a DC power supply. It's any person with ordinary skill in the art would know from reading that patent that you have to hold the parts in some fashion. That sounds sensible enough when you say it, but where in the record do we go, at least in evidence that's been admitted, to find that assertion supported? Or do we need it? You go to the tennis patent and you see the fact that you can have a battery supply with a housing to do the same type of permutations and calculations. So you go from Tomei to tennis to pick up… Yes, and the fact that, don't forget, their expert was Dr. Kreef, I think it's volume 3A1335, who admitted that these are elements all in the art, as well as the functions. And then you go to the Shulman patent, which is another portable temperature recording device, which has the exact same functions. Did he say that about the housing and the power supply? Yes, the Tomei, the tennis patent does have a housing. No, but I'm talking about the Kreef testimony. He admitted that the hardware of the asserted invention, the battery and the housing, is all in the art. That there were no new… What page is that at? I thought I had volume 3, cited in our brief, A1335, and A1334, and I think A1339. This was a deposition transcript, I believe, that was submitted in opposition to their motion for summary judgment, or maybe submitted in support of our motion for summary judgment of invalidity. The Shulman patent is yet another portable temperature recording device, which has the exact same functions and hardware, except uses an integrated circuit instead of a microprocessor. Microprocessors for small data recorders were not yet popular in 1978 because of technology, but an integrated circuit, for them, for Sensotec to say, we're going to take an integrated circuit out and put a CPU in and do this exact same thing, exact same functions, hardly seems to be patentable and should not be mentioned. There is nothing novel about that. Even the Vashie patent, which we addressed in our opening brief, discloses a temperature recording device that records data for later display. The only distinction is that Vashie records all the data, like time and temperatures. So the asserted patent is clearly anticipated, and if not anticipated, it's obvious in view of all of this art, it's rare to find a situation where there's so much art on point. Because of the fact, just by having a battery-powered device that stores calculated data such as minimums, maximums, and averages, it was well known in the private art. Your client sought the re-examination? Yes. What's the status of that? It was granted. We talked to him and he said, oh, it's probably about a year out because I've got so many ahead of you. I guess it's a particularly impacted art unit, and so we don't expect to hear anything from them from 6 to 12 months. He did tell us a year when we called, which was very disappointing because our client is hanging on by a thread, being a small company from Ventura County. One of the things that doesn't really show up well in a record is that when it comes to litigating patent infringement cases, if you're a small entity, you really don't have a prayer. Getting the experts that you need and doing everything. Well, that comes through in your brief, though. We did say that, although we'll stick with the record. Mr. Morrison? Yes, Your Honor. Good morning, Your Honor. May it please the Court. Your Honor, first of all, the invention of the 200 patent. The invention of the 200 patent is to calculate and store values which are associated or based upon portions, some or all of the signal. The signal are the raw temperatures. And the invention is, that no one else had ever done, was to provide an opportunity to get the extreme temperature events, high, low, because this is for fruit being shipped across the country over two weeks, to get that on the dock and not to have to do the calculation. And Mr. Kreef, in the same record that was just cited to you, said, oh sure, you could find the structure, the compounds. And people might even know how to do some of the functions, area under the curve. But the question was, would one of ordinary skill, on October 7, 1991, the day before the application, would one of ordinary skill in the art have known to do it? You said calculate and store values associated with portions of the signal. Now, suppose I have a thermometer that records and stores temperature over time. And the way it does this is that you have an electrical signal in, depending on the heat and the environment of the little instrument. The signal ranges from 2 millivolts to 9 millivolts. And you have a system that records that as the temperature, correlating the millivolts with the actual temperature. Why doesn't that satisfy this Kling limitation? First of all, just storing raw temperatures, Your Honor? No, converting the signal, which is the millivolts signal, into temperature. It's calculating temperature based on millivolts. It has an algorithm that says if you have 2 millivolts, it's got to be between 30 and 40 degrees. And if you have up to 9 millivolts, it's 80 degrees. Your Honor, I think that is like the data logger. I think that's what that's like. Why doesn't that satisfy the Kling limitation as you just read it out? I'm calculating. I'm storing. It's a value associated with a portion of a signal. Well, Your Honor, I don't think that it is a selected portion other than the most recent portion of the signal. No, I'm storing all of the signals, all the way back to when I turned the machine on. If you're just storing the signals, I don't think it's as— I'm sorry. I'm storing the values associated with the signals. That is to say, I'm storing the temperature, which is— An electrical value. No, a temperature which is calculated from the electrical value. I think, Your Honor, that doesn't reach what Claim 1 does, because what—and if I may, Your Honor— Sure. I think what Claim 1 does is it says, we want extreme temperature values. That's what the spec says. We want extreme temperature values. That's what we're looking for. We want those pulled out. We don't care about simply values that reflect all of the temperatures. We want to know where the high ones were. We want to know where the low ones were, Your Honor, even if it's over the trip or if it's on a day-by-day basis. That's what we want to know. That's what the invention is about. And it's why, Your Honor, it's why in the prosecution history, the Germanton patent, which is a temperature art patent— Germanton, Your Honor—Germanton stores the last temperature. That's what it discloses. And this—and there was claim language added here to overcome Germanton. The claim language, other than the most recent portion of said signal. Two things I'd like to point out to the Court. Before you leave that, you've been telling Judge Bryson what you think and what you don't think. But what does one of ordinary skill in the art at the time of the invention think? Well, the only record from one of ordinary skill in the art in this case, Your Honor, is from Peter Creek. It was properly before the district court. But doesn't Creek's testimony give you a problem? Let's take, for example, the Shulman reference, which is distinguished on the ground that Shulman didn't use a microprocessor. And your witness, Mr. Creek or Dr. Creek or whatever he is at 1337, says yeah, everybody would have known about microprocessors at that time. Why doesn't that cause you a bit of a problem? He testifies, Your Honor, in his declaration, which is in this record, that the microprocessor is not inherent, that it is not equivalent. Well, maybe not inherent, but since he says that it was generally known, why doesn't that render it obvious to take Shulman and add a microprocessor to it? Well, I'm not one of ordinary skill in the art in electrical engineering or computer science, Your Honor. And part of the problem in this case is that TNT, and I'm going to come back to your question. Well, you know, it's not my question because that's what I'm interested in. Well, he says, Your Honor, that he says that it is not obvious in his declaration as one of ordinary skill in the art, that is, to use a microprocessor instead of a device. Well, that's a conclusion. In his testimony here at 1337, just as one example, he says, yeah, it was generally known to use a microprocessor. So what I'm not understanding is why that doesn't at least raise a genuine issue of material fact as to the obviousness of this invention over Shulman. Because, Your Honor, TNT had the burden of putting forth on summary judgment a prima facie case. Well, they can use your witness, can't they? Well, I don't think he gives them an issue of fact, Your Honor. He says, because he says it's not obvious. For him to negative doesn't give them their burden. They have to. But you're not addressing the testimony that I'm referring to. Let's assume that we discard his statement in the declaration as being conclusory. Let's just assume that. I know you're arguing to the contrary. But we take his deposition testimony here, and doesn't that show that this is obvious over Shulman or at least raise a pretty good fact question as to whether it is obvious. It is not. I don't think it does, Your Honor. May I respond to that? Yeah. I don't think that the burden of showing that it's obvious is to take the factors in 103, the statute, and to take the factors in this court's decision in Die Star, and to look at those factors and say, I'm going to analyze the prior art, I'm going to analyze the problem to be solved, and I'm going to analyze the state of ordinary skill in the art of time. That's the kind of evidence that has to be before the court. And the person who has that burden, Your Honor, is one attacking the invalidity of the path. And they didn't do that here, Your Honor. It wasn't properly before the district court. And I depose their expert, Your Honor. No, I'm talking about your expert, not their expert. They can rely on your expert. The same problem exists with respect to Tomei, where your expert comes in and says, yeah, everybody knew about power supplies and having a self-contained power supply. So you combine that with the Tomei patent. Why doesn't that raise at least a serious question of obviousness? Your Honor, he doesn't say he would combine it. He doesn't think that you would. Your Honor is asking me, and he said there's been nothing provided here about motivation to combine. There's been nothing provided here about whether or not this is obvious. Nothing. And he says I don't think it's obvious. But that's legal. You know, we've said recently, we've made very clear that the nature of the problem to be solved can result in a combination. So why isn't the nature of the problem to be solved, for example, with respect to Tomei or Shulman, that you take these well-known features and combine them? Why isn't that sufficient? Because one of ordinary skill in the art has to say that, Your Honor. And I don't think he said that by saying that something, a compound, was known. The question is would you have taken that compound and combined it in this context. That's the question. And he doesn't say that, Your Honor. And, Your Honor, the combinations, the first time we saw the combinations in this case was on reply. When I deposed their expert, their expert of ordinary skill, about invalidity, he wasn't talking about Shulman. And he told me that he was complete, that I had all of his opinions. And they waited until after the summary judgment papers were filed. And then, after waiting and seeing, then they came up with some more art and some new opinions about the art. And to this day, Your Honor, in the record, in the record, there's nothing from one of ordinary skill in the art explaining. And as the district court found, there's no prime and basic case here. From one of ordinary skill in the art as to whether or not you would find, you would combine any of those pieces of art. Well, when you say prime and basic case, that would be the test for determining whether they're entitled to summary judgment. But they don't have to establish a prime and basic case in order to say that you shouldn't have been given summary judgment. All they have to do is to point out problems with your presentation. Well, Your Honor, And create a question of fact for trial. Their summary judgment motion was denied. Right. Ours was granted. Right. This is the point Your Honor is making. Right. The standard on a denial of a motion for summary judgment is abuse of discretion. That's the standard. Well, I, that's. On theirs. I understand, Your Honor, that DeNovo, summary judgment appears DeNovo. I understand that. I'm not trying to argue with that. The district judge, Your Honor, based on the record he had in front of him on validity. Right. Lacked, lacked the kind of prime and basic case he needed to have. In order to grant summary judgment for them. Well, Your Honor, I think for him to declare that the patents were invalid, he lacked any prime and basic basis. Well, he lacked it because he didn't allow the declarations in, right? He didn't allow them, Your Honor. Otherwise, there would have been enough at least to have a. May I address that, Your Honor? As to obviousness, I don't think that the declarations that are in this record are sufficient. I don't think they're sufficient. They do not address the questions that Judge Dyke asked me about a minute ago. He raises an issue, if it's let in, on 102. He lets in. If he lets that in, there's an issue about equivalency of a microprocessor and an integrator. If he lets that in. But, Your Honor, fundamentally, these rules are important rules. You can't wait and see about what you're going to do. But you also have the rule that says if something does come in on reply that you are entitled to respond to it, not to exclude it as the first shot out of the gun. Yeah, and I don't want to pick, Your Honor, but, you know, unfortunately, what they did wasn't a reply. It was new opinions, and they admitted below in their so-called weak filed motion with the district court. They admitted that these were new opinions, and they said these aren't replies because they wanted to put new things in. And now, you know, in this court, they want to say, oh, it was a reply. Your Honor, litigants are entitled when they ask someone at his or her deposition, what are your opinions? And we talked about anticipation that day. What are your opinions? Well, listen, I thought that your argument below for excluding these affidavits was that they hadn't been provided in response to the interrogatory. And it struck me as a bit puzzling because if they didn't exist at the time of the interrogatory, why did they have to be supplied? Our argument was they were late. They were late because of the interrogatory. Well, no. No? Your Honor, there was a motion to compel in this case that was granted on February 28, which was after the deposition. These materials weren't provided to us until after summary judgment. Did they exist before then? There were some lawyer-prepared documents. The answer is no, right? The date of the declarations is after February 28. Yep. And after March 6, Your Honor, the summary judgment papers were filed. After March 6. But if the ground for excluding it was that they didn't comply with the February 28 order, the February 28 order was only directed to things that existed as of February 28, no? Your Honor, I believe that the basis for excluding this was they were late. And that's what the district judge said on the record. He said they were late. He said, Eurysta's out because he's late. And when I say late, Your Honor, we may well have complained about the interrogatory because there was a court order and failure to comply with the court order. But the district judge excluded it because it was late. He didn't. He did exclude Poley also. Poley only talked about components and not function. What, in your view, is missing from Tomei that is present in the document? Tomei is an indoor-outdoor thermometer, Your Honor. It does not teach or disclose a housing and closing sensors or transponders in the case of Tomei. The housing and the power source are the two. But that's it, right, that's missing from Tomei? They are missing because it's an indoor-outdoor thermometer. Those are the only things that are missing from Tomei. Those are the things that are missing from Tomei. The only things. Okay. Thank you. Mr. Sloan. I'd just like to state that the real only direction we have in this report were a few words that said, and then he said, And, fortunately, that's all we have. We don't know how late, why late. We don't believe we were late. We believe that at every step of this litigation, they knew about these references we're talking about. They knew about the fact that we're claiming anticipation. They knew about the fact that we're claiming obviousness. Admittedly, we had an expert witness. Mr. Risto had never done this before, and we got him late, and he didn't do a very good job. But at no time was there any sandbagging that they would have that they indicated that there was all these references that they knew what the arguments were. In fact, Bissell had very voluminous amounts of materials that were provided. They made a big deal about the fact that, well, he's a patent lawyer. He's not a person skilled in the art. He's not allowed to submit references that show that these references basically disclose everything. When it comes to simple technology like this where their experts admit that all these elements are old, it's just a matter of saying, lookit, this piece of paper has these four elements. This piece of paper has the same four elements. It's found on the patent. And that's what was done, and that's something that's usually allowable to help the trier of fact here sort things out. Because admittedly, district courts don't have time to sort through patents and see what the words say. And more importantly, Bud Pooley, who was inventor of T&T's own patent, was a person skilled in the art, and he addressed a lot of these same things. His declaration was not excluded for any reason. He's a person skilled in the art, although he would claim that he's not, even though he's been in this business for so long as a patentee himself.  In terms of making a prima facie case for indelibity, one need only look at the file histories, the cited references, and how they link together. You know, on that point, I think I made a misstatement, and I think I was unfair to Mr. Morrison on that, because you had the burden of proof, right? I mean, because you're talking about, and so in the motion for summary judgment, then you do have an, I think he was correct and I was wrong, you do have an obligation to make a prima facie case, since you're the, both where you are the moving party and also where you are the non-moving party, right? We were both the moving party and the non-moving party. Right. That's correct. But in both cases, the burden of proof was on you. Because on anticipation, on all indelibity questions, right? I'm not sure that would be the case, because on their motion where they got summary judgment and saying the patent's not invalid, I would think that they would bear some burden. Well, their burden then is to point out, to avoid summary judgment for you, is to point out weaknesses in your prima facie case that would create a question of fact, right? I'm not sure. I think I've caused the confusion here, and I apologize. But I do think in the end that's the governing principle. The bottom line is, Euresta did provide declarations, and there were some materials that probably weren't fully addressed in his prior expert report, which really wasn't very well done. But the bottom line is, the entire declaration was excluded. There were portions that should have been kept in. But more importantly, we would ask that this court would find that construing that claim or requiring each and every claim that requires selected portions of signal, such that it does not include all of the signal like the time and temperature product does, which is admitted, and find that there's no infringement, and that the case would go back to the district court on the question of validity, if that would be the case. But I will tell you that the question of obviousness is a question of law here, in view of the fact that this art is so darn close, except for maybe a housing, which is inherent, and a power supply, which is a battery, one that says DC power supply, that's got to be inherent. And that's one of the reasons why this court has to bring some sensibility to these situations, where for them to say that, well, it's not prior art, it's not relevant because it doesn't have a housing, well, any person, even my own child, would know that if I had a bunch of parts, I have to put them in a bag, or some sort of housing. And so I would ask that the court would find that the T&T product does not infringe, as a matter of law, unless the claims are properly construed, and find the patent inbound, and if the court can't do that, then send it back to the district court for further comment on invalidity. But that, obviously, is a very tough thing to find clients considering the circumstances. Thank you very much. All right. Thank you. The case is submitted. All rise. Thank you.